**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

CATHERINE ARBAS,

Plaintiff,

v. Action No. 2:18cv97

PHYAMERICA GOVERNMENT SERVICES, INC.,

Defendant.

## OPINION AND ORDER

This matter comes before the Court on plaintiff Catherine Arbas's ("Arbas") unopposed motion for summary judgment regarding her claim of retaliation in violation of Title VII, 42 U.S.C. § 2000e-3, along with a supporting memorandum and a declaration signed by Arbas under penalty of perjury ("Dec."). ECF Nos. 25, 26, 26-1. Defendant PhyAmerica Government Services, Inc. ("PhyAmerica"), filed a response "confirm[ing] that it will not be filing any opposition to or otherwise opposing" Arbas's motion for summary judgment. ECF No. 27. The parties have consented to the jurisdiction of the undersigned. ECF No. 15. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment.

## I. FACTUAL BACKGROUND

Arbas was an art therapist employed by PhyAmerica and contracted to work at the Womak Army Medical Center for the United States Department of the Army ("Army"). ECF No. 26-1, Dec. ¶ 3. On October 30, 2016, Arbas reported to her direct superior, LCDR Joseph Newcomb ("Newcomb"), that she was sexually harassed the previous day by Dr. Zambrano, an Army doctor

in a superior position relative to Arbas. *Id.* at ¶¶ 4–6. After that report, Arbas was subject to "constant hostility" from Army superiors and supervisors, including: reduced hours; interference with her art therapy services; ignoring her presence and attempts to converse with supervisors; condescending comments from supervisors; and unmanageable schedule demands. *Id.* at ¶ 7.

In early August 2017, Arbas informed Newcomb, Commander Klimp, and another supervisor that she was working in a hostile work environment as a result of reporting Dr. Zambrano. *Id.* at ¶ 8. On August 9, 2017[1], PhyAmerica reduced Arbas's work from 40 to 25 hours per week. *Id.* at ¶ 9. On August 17 and 28, 2017, Newcomb refused to sign time sheets for Arbas; she could not be paid by PhyAmerica unless her timesheets were signed by the Army. *Id.* at ¶¶ 10, 13. Commander Klimp also failed to respond to her requests for a copy of her "sexual harassment paperwork" and to move forward with any investigation of that matter. *Id.* at ¶ 11.

On September 6, 2017, Arbas reported these issues with the Army to Valerie Pichardo and Brandon Ross, supervisors at PhyAmerica. *Id.* at ¶ 14. She also contacted Tausha Carter, another PhyAmerica supervisor, on September 8, 2017, regarding the sexual harassment report and Arbas's request for help with the investigation, but Carter "strongly recommended that [Arbas] not make any trouble for [the] Army if [she] wanted to keep [her] job." *Id.* at ¶ 15. Arbas responded that she would file an EEOC complaint as a result of the actions taken against her since her sexual harassment report. *Id.* PhyAmerica terminated Arbas on September 29, 2017, claiming that she committed a HIPAA violation, which Arbas denies. *Id.* at ¶¶ 16–19.

"After being subject to the hostile work environment," Arbas experienced a variety of physical and emotional changes, including almost daily nightmares, depression, paranoia, an

[1] Arbas's declaration states 2018, rather than 2017, but this appears to be a typographical error, because the related paragraphs describe events in August of 2017 and Arbas was terminated in September of 2017.

"anxiety level . . . near panic most days," and a need to wear a jaw protector to prevent anxiety-related teeth-grinding. *Id.* at ¶ 28. She sees a doctor for her stress and emotional issues, and experienced a decreased appetite that led to a weight loss of ten pounds. *Id.*

## II. ANALYSIS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The movant has the burden of showing that there is no genuine issue of fact," and "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.

### A. There is no genuine dispute of material fact regarding PhyAmerica's liability for violation of Title VII.

Under Title VII of the Civil Rights Act, it

> shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

"In order to establish a prima facie case of retaliation [in violation of 42 U.S.C. § 2000e-3(a)], a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir.

2005). Once the plaintiff carries her initial burden of establishing a *prima facie* case of retaliation, the burden shifts to the defendant, who is obliged to articulate a legitimate, non-retaliatory justification for the adverse employment action." *Id.* at 405. "If the defendant carries this burden, the onus is on the plaintiff to then demonstrate that the non-retaliatory reason advanced by the defendant is a mere pretext." *Id.*

Under the "opposition" provision in 42 U.S.C. § 2000e-3(a), "an employee is protected when she opposes not only . . . employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful, and the Title VII violation to which the oppositional communication is directed may be complete, or it may be in progress." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (citations and quotation marks omitted). The "threshold for oppositional conduct is not onerous. Instead, '[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity.'" *Id.* (quoting *Crawford v. Metro Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009)). Arbas has established this first element of her *prima facie* case, because she opposed Dr. Zambrano's sexual harassment and the ensuing hostile work environment by reporting those conditions to her Army supervisors and to PhyAmerica.

Arbas also established the second element of her *prima facie* case, because PhyAmerica significantly reduced her hours and ultimately terminated her. Both of those actions are adverse employment actions. *See, e.g., E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 341 (4th Cir. 2001) (noting that a reduction in hours was an adverse employment action in a retaliation claim).

Finally, Arbas established the third factor, because the adverse employment actions were causally connected to her reports of activities in violation of Title VII. "Title VII retaliation claims

must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Arbas reported the hostile environment and lack of investigation into her sexual harassment claim to PhyAmerica on September 6 and 8, 2017, and was fired twenty days later, on September 29. Such close temporal proximity is sufficient to establish but-for causation in retaliation cases. *See, e.g.*, *Taylor v. Republic Servs., Inc.*, 968 F. Supp. 2d 768, 798 (E.D. Va. 2013) (concluding that causation was established when 42 days elapsed between an employee's protected activity and termination); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that employee established a *prima facie* case of retaliation when two months and two weeks elapsed between the filing of an EEO complaint and termination).

Accordingly, Arbas established her *prima facie* case of retaliation in violation of Title VII. PhyAmerica has not responded to this *prima facie* case with a legitimate, non-retaliatory justification for the adverse employment action. There is no dispute of material fact regarding PhyAmerica's liability for violating Title VII, and Arbas's motion for summary judgment is granted with respect to liability.

**B. Arbas is entitled to damages for PhyAmerica's violation of Title VII.**

Based on Arbas's declaration, the Court finds that she is entitled to backpay and compensatory damages, but is not entitled to front pay.

**1. Backpay**

"Title VII provides prevailing employees the amount of lost wages, or back pay, that would have accrued from the time of the wrongful discharge through the time when the court *might* reinstate the employee." *Taylor*, 968 F. Supp. 2d at 801 (citation and quotation marks omitted).

A back pay award is measured against the dual purposes of Title VII: "first, the elimination of employment discrimination and second, the restoration of persons aggrieved to the situation they would have occupied were it not for the unlawful discrimination." *Id.* (citation and quotation marks omitted). "[I]n the case of a plaintiff who was unlawfully discharged, like the plaintiff here, the claimant's duty to mitigate damages requires reasonable diligent efforts to seek and accept new employment substantially equivalent to that from which he was discharged." *Id.* (citation and quotation marks omitted). In addition, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1).

Here, Arbas has attempted to mitigate her damages by applying for art therapist positions at a variety of private and government facilities. Dec. ¶ 25. Her declaration includes a sample of nine such positions and states that she has "made numerous attempts to obtain employment." *Id.* However, she has remained unemployed since PhyAmerica terminated her. *Id.* at ¶ 26. Arbas earned $32.27 per hour, plus benefits, under her contract with PhyAmerica, and worked 40 hours per week. *Id.* at ¶ 30(a). Between the date of her termination and the filing of her motion for summary judgment, 74 weeks elapsed, during which time she would have earned $95,519.12 in income and $19,103.84 in benefits had she remained employed by PhyAmerica. *Id.* at ¶ 30(a), (b). Her declaration, and the lack of any opposition, are sufficient to support an award of these damages.[2]

[2] Arbas has not requested an award of prejudgment interest as a component of her backpay award, so the Court declines to exercise its discretion to award prejudgment interest. *Mohammed v. Cent. Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932, 949 (E.D. Va. 2015) ("Prejudgment interest lies within the sound discretion of the Court."); *see also Loeffler v. Frank*, 486 U.S. 549, 557–58 n.6 (1988) (noting that "Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers," and courts have "broad equitable powers" regarding such components of compensation).

### 2. Compensatory damages for emotional distress

In a Title VII retaliation case, "a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress" when that testimony "establish[es] that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 546–47 (4th Cir. 2003) (citation and quotation marks omitted). The plaintiff's "testimony cannot rely on conclusory statements that the plaintiff suffered emotional distress or the mere fact that the plaintiff was wronged," but must instead "indicate with specificity how [the plaintiff's] alleged distress manifested itself," and "show a causal connection between the violation and her emotional distress." *Id.* at 547.

For example, a Title VII plaintiff's testimony that "she was 'embarrassed, frustrated, and angry,' 'very disgusted,' and that she 'didn't feel very good about coming to work,'" and "that this distress inflicted a series of specific physical ailments on her: 'frequent headaches, insomnia, irregular menstrual cycles, nausea, [and] vomiting,'" was sufficient to sustain a jury verdict awarding $50,000.00 in emotional damages. *Id.* The award was sustained despite the plaintiff not seeking medical attention for her physical symptoms, because the plaintiff explained that she relied on her faith and family to handle those symptoms. *Id.*; *see also Homesley v. Freightliner Corp.*, 61 F. App'x 105, 116–17 (4th Cir. 2003) (upholding $200,000.00 compensatory damages verdict in a Title VII hostile work environment claim, where the plaintiff's psychiatrist testified that plaintiff's depression and post-traumatic stress syndrome were caused by her co-worker's sexual assaults, the plaintiff's illnesses were severe and physically debilitating and had a devastating effect on her weight, her family, and her social life, and she was on medical leave for approximately twenty-four weeks over a two and one-half year period and required major doses of psychotropic medications).

Here, Arbas submitted a declaration describing the physical and emotional changes she endured after being subjected to the hostile work environment that she reported to the Army and PhyAmerica. Before the events with Dr. Zambrano, Arbas was a "positive, open-minded, laid back, [] hopeful person" who "slept well, stayed in touch with friends, was always engaged with the people around [her], and did not feel depressed." Dec. ¶ 27. However, "[a]fter being subject to the hostile work environment," Arbas has nightmares almost every night, she feels "depressed and [] frequently tearful for seemingly no reason," and she has been "on edge and paranoid," with an "anxiety level . . . near panic most days." *Id.* at ¶ 28. She "no longer sleep[s] well and must wear a jaw protector to keep from grinding [her] teeth in [her] sleep," which is "a sleep behavior related to [her] anxiety." *Id.* She sees a doctor "to help cope with [her] stress and emotional issues." *Id.* She has headaches more frequently than she used to, and her appetite "significantly decreased resulting in a loss in weight of approximately 10 pounds." *Id.*

Arbas's statement regarding the emotional and physical changes she experienced following her termination from PhyAmerica, and the lack of any opposition by PhyAmerica, are sufficient to support her request for compensatory damages in the amount of $50,000.00. *See, e.g.*, *Bryant*, 333 F.3d at 546–47 (affirming $50,000.00 compensatory damages award based on Title VII plaintiff's testimony regarding her emotional distress, such feeling frustrated, disgusted, and angry, as well as her physical symptoms, including headaches and insomnia).

**3. Front pay**

In Title VII cases, "front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). "[W]hen an appropriate position for the plaintiff is not immediately available without displacing an incumbent employee, courts have ordered

reinstatement upon the opening of such a position and have ordered front pay to be paid until reinstatement occurs," but where "reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement." *Id.*

Front pay is entrusted to a court's discretion; it is "designed to place a plaintiff in the financial position she would have been in had she been reinstated, but such an award should be granted sparingly because it could result in an unfair windfall." *Taylor*, 968 F. Supp. 2d at 802 (citation and quotation marks omitted); *see also Loveless v. John's Ford, Inc.*, 232 F. App'x 229, 237–38 (4th Cir. 2007) (concluding, in an ADEA case cited in *Taylor*, that the district court did not abuse its discretion by denying front pay after considering "evidence that [the plaintiff] had been less than diligent in attempting to secure replacement employment," where the plaintiff sought employment for six months after his discharge, then did not seek any work for the following four months, and thereafter sought employment once a month). "Because front pay necessarily involves speculation as to future events, the Court must judiciously scrutinize the record to determine whether future events are sufficiently predictable to justify such an award." *Taylor*, 968 F. Supp. 2d at 802 (citation and quotation marks omitted).

"Although [t]he Fourth Circuit has not specifically enumerated a list of factors to consider in deciding to award front pay[,] [o]ther courts have considered the plaintiff's prospect of obtaining comparable employment; the time period of the award; whether the plaintiff intended to work; and whether liquidated damages have been awarded." *Mohammed v. Cent. Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932, 948 (E.D. Va. 2015) (citation and quotation marks omitted). Other circuits have clarified that the burden is on the plaintiff requesting front pay to "present evidence in support

of the award." *Franchina v. City of Providence*, 881 F.3d 32, 57 (1st Cir. 2018).

Arbas requests $33,560.20 in damages, corresponding to six months of lost income because she does not "reasonably expect" to secure employment before that time. Dec. ¶ 30(c). However, Arbas has not explained her estimation of her job prospects, and she has not provided more than a cursory explanation of her job search process to date. Without this information, the Court is unable to evaluate her intention to work or her prospect of obtaining comparable employment. Accordingly, the Court denies her request for front pay. *See, e.g.*, *Mohammed*, 128 F. Supp. 3d at 956 (denying request for front pay when the record contained an "insufficient basis" for such an award); *Loveless*, 232 F. App'x at 237–38 (affirming denial of front pay when employee sought employment for several months but then failed to make further employment inquiries for four additional months and only once a month thereafter, when median duration of unemployment in the economy was approximately 10 weeks, indicating employment was generally available).

## III. CONCLUSION

For the foregoing reasons, Arbas's unopposed motion for summary judgment, ECF No. 25, is **GRANTED IN PART** and **DENIED IN PART**. The motion for summary judgment is **GRANTED** with respect to a finding that PhyAmerica is liable to Arbas for violating Title VII, and the Court awards damages to Arbas in the amount of $114,622.96 for back pay and benefits and $50,000.00 for compensatory damages, together with post-judgment interest. *See Hylind v. Xerox Corp.*, 632 F. App'x 114, 116 (4th Cir. 2015) (affirming post-judgment interest on a compensatory damages award in Title VII retaliation case). Post-judgment interest shall accrue at the rate specified in 28 U.S.C. § 1961(a). Costs will be taxed by the Clerk following entry of

judgment.[3] 28 U.S.C. § 1920.

The motion for summary judgment is **DENIED** with respect to Arbas's demand for front pay.

/s/
Robert J. Krask
United States Magistrate Judge

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 4, 2019

[3] Pursuant to 42 U.S.C. § 2000e-5(k), attorneys' fees may be allowed as part of the prevailing party's costs. However, Arbas has not requested a separate amount for attorneys' fees in her summary judgment motion, so attorneys' fees are not included in the amount awarded herein.